IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MELODY F. SCHWENK, | ) |
| Plaintiff, | ) Civil Action No. 25-cv-01298-LKG |
| v. | ) February 27, 2026 |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

In this civil action, the Plaintiff *pro se*, Melody F. Schwenk, alleges that the Defendant, Portfolio Recovery Associates, LLC ("PRA"), failed to provide a reasonable accommodation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101, by engaging in harassment and abusive trade practices while seeking to collect a debt. *See generally* ECF No. 25. The Defendant has moved to dismiss the second amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 49. The motion is fully briefed. *See* ECF Nos. 49, 55 and 57. No hearing is necessary to resolve the motion. *See* L.R. 105.6 (D. Md. 2025). For the reasons that follow, the Court: (1) **GRANTS** the Defendant's motion to dismiss (ECF No. 49) and (2) **DISMISSES** the second amended complaint (ECF No. 25).

**II.   FACTUAL AND PROCEDURAL BACKGROUND[1]**

**A.  Factual Background**

This civil action arises from PRA's efforts to collect a debt owed by the Plaintiff and a

---

[1] The facts recited in this memorandum opinion are taken from the second amended complaint, the Plaintiff's Exhibit G, the Defendant's motion to dismiss and memorandum in support thereof, the Plaintiff's response in opposition thereto, and the Defendant's reply brief. ECF Nos. 7-4, 25, 49, 49-1, 55 and 57.

lawsuit that PRA brought against the Plaintiff in the District Court for Prince George's County, Maryland. ECF No. 49-1 at 1. The Plaintiff alleges that PRA violated: (1) Titles II, III and V of the ADA, by failing to reasonably accommodate her deafness; (2) Section 1692d of the FDCPA, by refusing to accommodate her deafness; and (3) the MCPA, by engaging in unfair, deceptive and abusive trade practices, including the denial of an accommodation. ECF No. 25 at ¶ 42.

As background, the Plaintiff, Melody F. Schwenk, is a deaf individual residing in the State of Maryland. *Id.* at ¶ 5.

The Defendant, Portfolio Recovery Associates, LLC, is a corporation that collects consumer debts nationwide, including in Maryland, with principal operations located in Virginia. *Id.* at ¶ 6.

In 2025, PRA attempted to collect a debt of approximately $2,600 from the Plaintiff connected to a Best Buy credit account. ECF No. 7-4. The Plaintiff alleges that she repeatedly notified PRA, beginning on April 7, 2025, of her need for "ADA-compliant written communication due to her Deafness." ECF No. 25 at ¶ 25. But the Plaintiff alleges that PRA "persistently routed sensitive communications through inaccessible or ineffective channels, including telephones and TDD/TTY-only options" and "refused to provide requested written/email access." *Id*. at ¶ 26.

The Plaintiff contends that PRA's status as a public entity and public accommodation requires that PRA provide her with a requested reasonable accommodation under the ADA after an individualized assessment. *Id.* at ¶ 42. The Plaintiff also contends that PRA's refusal to provide her with written communications "without any individualized analysis" violates the ADA. *Id*. at ¶ 27. And so, the Plaintiff contends that PRA's "categorical reliance" on voice telephone, video relay service ("VRS") and teletypewriter/telecommunications device for the deaf ("TTY/TDD") systematically excludes deaf customers who, like herself, either lack American Sign Language ("ASL") or VRS access, cannot obtain sufficient internet bandwidth, cannot afford or locate TTY/TDD equipment, require plain-language written formats or rely upon lip/speech-reading or written notes. *Id*. at ¶ 29.

The Plaintiff also alleges that PRA violated the ADA and other laws during the legal proceedings related to its debt collection action. In this regard, the Plaintiff alleges that PRA's legal team denied receipt of her ADA-compliant filings, ignored and denied settlement offers and permitted third-parties to access or act on court filings in the case. *Id*. at ¶¶ 31-33. The Plaintiff

also alleges that PRA retaliated against her by issuing a "cease communications directive." *Id*. at ¶ 34.

Lastly, the Plaintiff contends that PRA's "discriminatory conduct has inflicted measurable economic and professional injury" on her. *Id*. at ¶ 40. And so, the Plaintiff seeks: (1) a declaratory judgment requiring PRA to communicate through exclusively ADA-compliant written formats for deaf consumers; (2) compensatory damages of $1,000,000; (3) punitive damages of $2,500,000; (4) an injunction requiring PRA to implement and train staff on ADA-compliant communication policies, the appointment of an ADA compliance officer and a three-year court monitoring period; (5) reimbursement of all costs; and (6) any further relief as justice may require to ensure full remediation of the Defendant's conduct. *Id.* at ¶ 43.

**B. Procedural Background**

The Plaintiff commenced this civil action on April 21, 2025. ECF No. 1. On May 18, 2025, the Plaintiff filed an amended complaint. ECF No. 7. On May 29, 2025, the Plaintiff filed a second amended complaint. ECF No. 25.

On July 7, 2025, PRA filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and memorandum in support thereof. ECF No. 49. On July 25, 2025, the Plaintiff filed a response in opposition to PRA's motion. ECF No. 55. On August 11, 2025, PRA filed a reply brief. ECF No. 57.

PRA's motion to dismiss having been fully briefed, the Court resolves the pending motion.

**III.    LEGAL STANDARDS**

**A. Fed. R. Civ. P. 12(b)(6)**

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005)

3

(citations omitted).  But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement."  *Nemet Chevrolet*, 591 F.3d at 255.

### B.  *Pro se* Litigants

The Plaintiff is proceeding in this matter without the assistance of counsel.  And so, the Court must construe the complaint liberally.  *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980).  But, in doing so, the Court cannot disregard a clear failure to allege facts setting forth a cognizable claim.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented"); *Bell v. Bank of Am., N. Am.*, No. 13-478, 2013 WL 6528966, at *1 (D. Md. Dec. 11, 2013) ("Although a *pro se* plaintiff is general[ly] given more leeway than a party represented by counsel . . . a district court is not obliged to ferret through a [c]omplaint . . . that is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised.") (quotations and citations omitted.)  And so, the Court must dismiss the complaint if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *GE Inv. Private Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (citation omitted).

### C.  The ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To prove a claim under Title II of the ADA, a plaintiff must show that (1) she has a disability; (2) she is otherwise qualified to receive the benefits of a public service, program or activity; and (3) she was denied the benefits of such service, program or activity, or otherwise discriminated against, because of her disability.  *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 (4th Cir. 2016).  In this regard, the ADA defines a "public entity" as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority."  42 U.S.C. § 12131.

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of

any place of public accommodation." 42 U.S.C. § 12182(a). To bring a claim under Title III, a plaintiff must allege facts to show that (1) she is disabled within the meaning of the ADA, (2) the defendant owns, leases, or operates a place of public accommodation, and (3) the defendant discriminated against the plaintiff by denying full and equal opportunity to enjoy services provided at such a place of public accommodation. *J.D. by Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663, 669-70 (4th Cir. 2019). Public accommodations must "take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 28 C.F.R. § 36.303(a). Public accommodations must also "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1).

Lastly, Title V prohibits discrimination against "any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To establish a *prima facie* retaliation claim under the ADA, the Plaintiff must prove (1) she engaged in protected conduct, (2) she suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action. *See A Soc'y Without a Name v. Commonwealth of Va.*, 655 F.3d 342, 350 (4th Cir. 2011). Importantly, the plaintiff is not required to prove the conduct was actually an ADA violation but must show she had a "good faith belief" the conduct violated the ADA. *Freilich v. Upper Chesapeake Health*, 313 F.3d 205, 216 (4th Cir. 2002).

### D. The FDCPA

Under the FDCPA, a debt collector cannot "engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Section 1692d provides examples of conduct that violates this provision including: "(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person;" "(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader;" "(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency;" "(4) The advertisement for sale of any debt to coerce payment of the debt;" "(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or

5

continuously with intent to annoy, abuse, or harass any person at the called number;" "(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity."  *Id.*  To prevail on a FDCPA claim, a plaintiff must prove that: (1) she was the "object of collection activity" arising from a consumer debt; (2) the defendants are "debt collectors" as defined by the FDCPA; and (3) the defendants were engaged in an act or omission prohibited by the FDCPA.  *Stewart v. Bierman*, 859 F.Supp.2d 754, 759 (D. Md. 2012).

In this regard, the FDCPA defines "debt collector" as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be due another."  15 U.S.C. § 1692a(6).  The FDCPA excludes from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  *Id.* at § 1692a(6)(F)(iii).  And so, the Fourth Circuit has held that, when an entity collecting a debt on behalf of another has obtained the right to do so before the debt became in default, that entity is not a "debt collector" under the FDCPA.  *See Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016) ("To simplify, this exclusion means that a person collecting nondefaulted debts on behalf of others is not a debt collector. This exclusion was intended by Congress to protect those entities that function as loan servicers for debt not in default."), *aff'd*, 582 U.S. 79 (2017); *see also Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*, No. 12-752, 2015 WL 2455811, at *10 (D. Md. May 22, 2015) ("Generally speaking, entities servicing or collecting a debt they were assigned before default are considered 'creditors' under the Act.").

### E.  Maryland Consumer Protection Statutes

Lastly, the Maryland Consumer Debt Collection Act ("MCDCA") prohibits eleven categories of conduct relating to debt collection, including prohibiting a debt collector from claiming, attempting or threatening to enforce a right with knowledge that the right does not exist.  *See* Md. Code Ann., Com. Law § 14-202(1)-(11).  This Court has held that, to prove such a claim, a plaintiff must show that: (1) the defendant did not possess the right to collect the amount of debt sought and (2) the defendant attempted to collect the debt knowing that they lacked the right to do so.  *See Pruitt v. Alba Law Grp., P.A.*, No. 15-0458, 2015 WL 5032014, at *3 (D. Md. Aug. 24, 2015).

To state a claim under the Maryland Consumer Protection Act ("MCPA"), the plaintiff must allege "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Stewart v. Bierman*, 859 F.Supp.2d 754, 768 (D. Md. 2012) (citing *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 143 (2007)).  Under the MCPA, "unfair, abusive, or deceptive trade practices" include violations of the MCDCA.  Md. Code Ann., Com. Law § 13-301(14)(iii).  The MCPA also includes several exemptions, including an exemption for the professional services of a lawyer.  Md. Code Com. Law § 13-104(1).

IV.    **LEGAL ANALYSIS**

PRA seeks to dismiss the second amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6), upon the following grounds: (1) the Plaintiff fails to state a claim under Title II of the ADA, because PRA is not a public entity as defined by Title II; (2) the Plaintiff fails to state a claim under Title III of the ADA, because the facts in the second amended complaint do not show that PRA denied the Plaintiff access to PRA's services, or otherwise failed to accommodate her; (3) the Plaintiff fails to state a claim under the FDCPA, because the conduct alleged in the second amended complaint does not constitute a violation under the FDCPA; (4) the Plaintiff fails to state a claim under the MCPA, because the second amended complaint does not allege facts to show that PRA's alleged conduct caused an injury, or is connected to the damages sought; (5) the Plaintiff fails to state a claim for retaliation, because the second amended complaint fails to allege facts to show that the Plaintiff suffered an adverse action; and (6) the Plaintiff's other causes of action fail to state claims for which the Court may grant relief, because the facts alleged do not show that PRA acted maliciously, or with reckless indifference. ECF No. 49-1.  And so, PRA requests that the Court dismiss the second amended complaint. ECF No. 49.

While the Plaintiff does not directly respond to many of the arguments in PRA's motion, she argues that the Court should not dismiss this matter, because there are sufficient factual allegations in the second amended complaint to support her ADA, FDCPA and MCPA claims. ECF No. 55.  And so, the Plaintiff requests that the Court deny PRA's motion.  ECF No. 55 at 15.

For the reasons that follow, a careful reading of the complaint makes clear that the Plaintiff's ADA claims are not plausible, because she has not alleged facts to show that: (1) PRA is a "public entity" or "public accommodation" within the meaning of the ADA; (2) PRA denied

her access to its services or other accommodations; or (3) PRA's conduct resulted in an adverse action or injury to the Plaintiff.   The Plaintiff also fails to state plausible claims under the FDCPA or the MCPA in the second amended complaint, because this pleading lacks factual allegations to show the type of conduct that would constitute a violation of these statutes.   And so, the Court: (1) GRANTS PRA's motion to dismiss (ECF No. 49); and (2) DISMISSES the second amended complaint (ECF No. 25).

### A.  The Plaintiff Fails To State A Claim Under The ADA

As an initial matter, PRA persuasively argues that the second amended complaint fails to state a plausible claim under the ADA for several reasons.   First, a careful reading of the second amended complaint makes clear that the Plaintiff fails to state a claim under Title II of the ADA. To do so, the Plaintiff must show, among other things, that PRA is a public entity. *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502-03 (4th Cir. 2016).

The ADA defines a "public entity" as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority."  42 U.S.C. § 12131.   But, as the Plaintiff acknowledges in the second amended complaint, PRA is not a public entity, but rather a private debt collection company.  ECF No. 25 at ¶ 6.  The Plaintiff's reliance upon the public function and joint participation tests to show that PRA is a public entity, or a state actor is also misplaced.  ECF No. 25 at ¶¶ 10-11.  Simply put, PRA cannot fall within the definition of a "public entity" because it litigates claims to enforce its rights in collection disputes like any other private litigant.  And so, the Court must DISMISS the Plaintiff's ADA claim under Title II.

The Plaintiff's Title III ADA claim also fails, because the second amended complaint fails to allege facts to show PRA denied the Plaintiff access to its services.  In the second amended complaint, the Plaintiff alleges that she informed PRA of her need for "ADA-compliant written communication due to her Deafness[,]" but PRA failed to provide this accommodation. ECF No. 25 at ¶¶ 25-26.  The Plaintiff also alleges that that PRA continued routing her communications with PRA through "inaccessible or ineffective channels, including telephone and TDD/TTY-only options."  ECF No. 25 at ¶ 26.  The ADA and its implementing regulations require that an entity subject to the statute consult with an individual requesting an accommodation about the type of auxiliary aid to provide.  28 C.F.R. § 36.303(c)(1)(ii).  But,

the ADA's implementing regulations also make clear that "the ultimate decision as to what measures to take rests with the public accommodation, provided that the method chosen results in effective communication." *Id*.

The Plaintiff alleges here that PRA used telephones and TDD/TTY-only options to communicate with her. ECF No. 25 at ¶ 26. Given this, the facts alleged in the second amended complaint, taken as true, do not show that PRA failed to provide an effective method for the Plaintiff to communicate with the company. Rather, the Plaintiff simply alleges that this method of communication was not her preferred accommodation. *Id*. And so, the Court also DISMISSES the Plaintiff's claim under Title III of the ADA.

The Court also agrees with PRA's argument that the second amended complaint fails to state a plausible claim under Title V of the ADA, because it lacks factual allegations to show an adverse action. In this regard, the Plaintiff alleges that PRA retaliated against her by "issuing a 'cease communications' directive, deleting credit tradelines after service of federal claims[], and engaging in other acts of actual malice and reckless indifference to protected activity." ECF No. 25 at ¶ 34. But, taken as true, these facts do not show that the Plaintiff suffered an adverse action due to PRA's alleged conduct.

Notably, the undisputed facts before the Court show that the "cease communications" directive referenced by the Plaintiff was a communication from PRA's legal counsel requesting that the Plaintiff only communicate with counsel, instead of directly with PRA. *See* ECF No. 8-4 at 4. The Plaintiff also fails to allege facts to explain how deleted credit tradelines created an adverse action under the ADA.

Lastly, the Plaintiff's allegations of "actual malice" and "reckless indifference" in the second amended complaint are not supported by any facts to show how PRA engaged in such conduct. ECF No. 25 at ¶¶ 30, 31 and 34. Without more, the Plaintiff's allegations are merely unsupported legal conclusions that are not sufficient to state a retaliation claim under the ADA. And so, the Court also DISMISSES the Plaintiff's claim under Title V of the ADA.

### B. The Plaintiff Fails To State A Claim Under The FDCPA

PRA also argues with persuasion that the Plaintiff's FDCPA claim is not plausible, because the second amended complaint lacks facts to show conduct that falls within the categories of impermissible conduct under that statute. The Plaintiff alleges that PRA engaged in "harassment, oppression, and abuse via inaccessible or abusive debt collection tactics." ECF

No. 25 at ¶ 42.  But she does not allege that PRA threatened harm to her physical person, reputation, or property; used obscene or profane language; or engaged in any other conduct cognizable under Section 1692d.  *See generally* ECF No. 25.

While the Plaintiff does allege that PRA allowed ABC Legal to access her docket filings, taken as true, this fact does not support a reasonable inference that PRA published the Plaintiff's name on a list of consumers who refuse to pay debts.  *Id.* at ¶ 33.  Nor does the second amended complaint contain any factual allegations to show that PRA advertised the Plaintiff's debt to coerce payment, made repeated or continuous calls with the intent to annoy or harass the Plaintiff, or failed to meaningfully disclose its identity in communications with the Plaintiff.  *Id.*[2] Without such additional factual allegations, the Plaintiff's conclusory assertions of "harassment" and "abuse" are insufficient to state a plausible claim under the FDCPA.  And so, the Court must DISMISS the Plaintiff's FDCPA claim.

### C.  The Plaintiff Fails To State A Claim Under The MCPA

As a final matter, the Plaintiff's claim under the MCPA faces similar deficiencies.  As PRA correctly argues, the MCPA does not apply to the conduct of their counsel.  ECF No. 49-1 at 9.

The second amended complaint also fails to allege facts to support an MCPA claim against PRA.  Notably, the Plaintiff generally alleges "unfair, deceptive, and abusive trade practices, including systemic denial of disability accommodations."  ECF No. 25 at ¶ 42.  But, the second amended complaint lacks facts to show the specific conduct by PRA that was unfair, deceptive, or abusive.  *See generally* ECF No. 25.  The Court also does not read the factual allegations in the second amended complaint regarding the Plaintiff's request for a reasonable accommodation to allege conduct that falls within the scope of the MCPA.  Md. Code Ann., Com. Law § 13-301 (providing that unfair, abusive or deceptive trade practices include categories such as false or misleading statements, misrepresentation and violation of certain

---

[2] The Plaintiff argues in her reply brief that the Defendant contacted her mother and disclosed the existence of the debt without identifying itself as a debt collector.  ECF No. 55 at 10.  If accepted as true, such an allegation could support a plausible violation of the FDCPA, which provides that a debt collector communicating with a third party for location information shall not state that the consumer owes any debt.  15 U.S.C. § 1692b(2).  But, the Plaintiff did not include this allegation within the four corners of the second amended complaint and "[i]t is well-established that parties cannot amend their complaints through briefing."  *Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

statutes like the Mayland Consumer Debt Collection Act); *see also* Md. Code Ann., Com. Law §
14-202(1)-(11) (prohibiting eleven categories of conduct relating to debt collection, including
prohibiting a debt collector from claiming, attempting or threatening to enforce a right with
knowledge that the right does not exist.).[3] And so, the Court must also DISMISS this final claim.

## V.      CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS** PRA's motion to dismiss (ECF No. 49);

(2) **DENIES-as-MOOT** Plaintiff's motion to expedite (ECF No. 30);

(3) **DENIES-as-MOOT** Plaintiff's motion for temporary restraining order (ECF No. 43);

(4) **DENIES-as-MOOT** Plaintiff's motion for discovery (ECF No. 56); and

(5) **DISMISSES** the amended complaint.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

---

[3] The Plaintiff also alleges that the Maryland State Department of Assessments and Taxation listed PRA
as a business "NOT IN GOOD STANDING" during the period of litigation.  ECF No. 25 at ¶ 12.  While
engaging in unlicensed debt collection may constitute a violation of the MCPA, the Plaintiff does not
allege that PRA engaged in debt collection activity without a license.  *See* Md. Code Ann., Com. Law §
13-301(14)(iii); Md. Code Ann., Com. Law § 14-202(10).